IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAI'I<br><br>Plaintiff,<br><br>vs.<br><br>C.J., by and through his Parents, CRYSTAL AND TYLER J. et al.,<br><br>Defendants. | ) | CV. NO. 10-00257 AWT-BMK<br><br>FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER |

FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER

Plaintiff State of Hawai'i Department of Education ("DOE") appeals an Administrative Hearings Officer's ("Hearings Officer") Findings of Fact, Conclusions of Law and Decision ("Decision"), rendered pursuant to the Individuals with Disabilities Education Act ("IDEA") and Hawaii Administrative Rules ("HAR") Title 8, Chapter 60. (Decision, R. at 1115.) The Hearings Officer concluded that the State's furlough program denied C.J. a Free and Appropriate Education ("FAPE"). (Id. at 1117.) For the following reasons, the Court FINDS and RECOMMENDS that the Hearings Officer's Decision be REVERSED and the case be REMANDED for further proceedings consistent with this opinion.

BACKGROUND

The following facts were established by the Hearing Officer's Decision and were not specifically disputed on appeal. C.J. is a nine year old with autism. (Id. at 1110, ¶ 1.) C.J.'s September 28, 2009 Individualized Education Plan ("IEP") included 1830 minutes per week of special education, 540 minutes per quarter of speech-language therapy, 360 minutes per quarter of occupational therapy, 60 minutes per month of counseling, Extended School Year Services, and other services. (Id. at 1111, ¶ 5.) C.J.'s mother ("Mother") accepted the September 28, 2009 IEP. (Id. at ¶ 8.)

On September 19, 2009, the State implemented furloughs due to budgetary concerns. (Id. at 1112, ¶ 10.) The first furlough occurred on October 23, 2009, and at the time of the administrative hearing, thirteen furloughs had occurred. (Id. & n.4.) On furlough days, the public school that C.J. attends ("Home School") is closed. (Id. at ¶ 10.)

On November 6, 2009, Home School convened a resolution meeting, which Mother, the special education teacher, the Principal, the District Resource Teacher, and the District Education Specialist attended. (Id. at ¶ 12.) The Principal informed Mother that the DOE would provide services on furlough days at the Home School from 7:30 a.m. to 4:00 p.m. with the Behavioral Instructional

Support Specialist and a paraprofessional. (Id. at ¶ 12.) However, C.J.'s special education teacher and other students would not be present on furlough days. (Id.) Mother accepted the services offered to C.J. on furlough days. (Id. at ¶ 16.) After furloughs were implemented, Mother and other people noticed that C.J.'s behavior deteriorated. (Id. at 1114-15, ¶¶ 26-33.)

On October 20, 2009, C.J., along with other plaintiffs, filed a complaint seeking to halt the furloughs. N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104, 1108 (9th Cir. 2010). The students alleged that the DOE had violated the stay put provision of the IDEA, which requires that the child remain in his current educational placement during the pendency of the proceedings. Id.; see 20 U.S.C. § 1415(j) (2006). Judge David A. Ezra denied the motion for a temporary injunction. Id. Judge A. Wallace Tashima later denied the students' motion for a preliminary injunction. Id. at 1108-09. The students appealed, and the Ninth Circuit affirmed the district court's denial of the students' motion for preliminary injunction. Id. at 1117.

On March 3 and 4, 2010, the Hearings Officer held a hearing in the instant case. (Decision, R. at 1110.) The Hearings Officer subsequently issued the Decision, concluding in relevant part that the DOE "procedurally and substantively denied [C.J.] a FAPE when it unilaterally changed [C.J.]'s educational program in

response to the institution of furlough days." (Id. at 1117.) The DOE appealed, asserting in relevant part that the Hearings Officer erred by concluding that it unilaterally modified C.J.'s IEP. (Opening Br. at 21.) The DOE also asserted that the Hearings Officer erred by failing to apply Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007). (Id.) In response, C.J. asserts that the Hearings Officer applied Van Duyn properly and concluded that the DOE materially failed to implement the IEP. (Responsive Br. at 30-32.) This Court FINDS and RECOMMENDS that the Hearings Officer's decision be REVERSED and REMANDED because the Hearings Officer failed to consider Van Duyn.[1]

STANDARD OF REVIEW

"In an action challenging an administrative decision, the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" Ojai Unified School Dist. v. Jackson, 4 F.3d 1467, 1471 (9th Cir. 1993) (quoting 20 U.S.C.A. § 1415(e)(2) (West 1990)). When reviewing state

---

[1] In light of this conclusion, it is unnecessary to consider the DOE's arguments that the Hearings Officer failed to consider expert witness testimony and that C.J. is not entitled to compensatory education. (Opening Br. at 35-40.) Additionally, it is unnecessary to address C.J.'s argument that he was not educated in the least restrictive environment, because the Hearings Officer did not address that argument. (Responsive Br. at 33-35); (Decision, R. at 1116-19.)

administrative decisions, "courts must give 'due weight' to judgments of education policy" and are not empowered to "substitute their own notions of sound educational policy for those of the school authorities which they review." Id. at 1472 (quoting Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir. 1987) (internal quotation marks omitted)). "How much deference to give state educational agencies, however, is a matter for the discretion of the courts[.]" Id. (quoting Gregory K., 811 F.2d at 1311) (internal quotation marks omitted). Deference to a hearing officer's findings is warranted where the findings are "thorough and careful." See J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 949 (9th Cir. 2010) (quoting JG v. Douglas County School Dist., 552 F.3d 786, 793 (9th Cir. 2008)).

DISCUSSION

One purpose of the IDEA is to provide children with disabilities a Free Appropriate Public Education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). A FAPE is "special education and related services" that, in part, "are provided in conformity with the individualized education program required under section 1414(d) of this title." Id. § 1401(9) (emphasis added). Under § 1414(d), "every disabled child must have an IEP drafted and put into effect by the local educational authority." Van Duyn, 502 F.3d at 818. The IEP is formulated by a team

including the child's parents, regular and special education teachers, and other individuals with relevant experience. Id. (citing § 1414(d)(1)(B)). The IEP addresses "the child's present level of academic achievement, annual goals for the child, how progress toward those goals is to be measured and the services to be provided to the child." Id. (citing § 1414(d)(1)(A)(i)). The child's parents are entitled to participate in any meetings regarding the IEP, and must receive prior written notice of any proposed changes in the IEP. Id. (citing § 1415(b)(1) & (3)). Under the IDEA, the child is entitled to have an education implemented in conformity with the IEP.

The Hearings Officer concluded that the DOE "procedurally and substantively denied [C.J.] a FAPE when it unilaterally changed [C.J.]'s educational program in response to the institution of furlough days." (Decision, R. at 1117.) Specifically, the Hearings Officer determined that C.J. was "procedurally denied a FAPE when a unilateral change was made to his program without benefit of his IEP team, including parents." (Id.) The Hearings Officer also determined that C.J. was "substantively denied a FAPE because the change in his educational program was not reasonably calculated to enable [him] to receive educational benefit." (Id.)

At the outset, there appears to be confusion as to the basis for the

Hearings Officer's decision. The DOE argues that under the Ninth Circuit's decision in N.D., furloughs did not change C.J.'s educational placement. (Opening Br. at 28.) C.J. asserts that the Hearings Officer did not determine that his educational placement changed, but instead determined that the DOE failed to implement his IEP. (Responsive Br. at 36.) It appears that the Hearings Officer did not decide the issue of educational placement. (See Decision, R. at 1117 n.8 ("As the Hearings Officer finds that [C.J.] was denied a FAPE, she need not address the second issue of whether [the DOE] unilaterally changed Student's placement.")) However, to the extent that the Hearings Officer concluded that furloughs caused a change in C.J.'s educational placement or program, this argument is not persuasive in light of N.D.[2] In that case, the Ninth Circuit determined that the stay put provision in 20 U.S.C. § 1415(j) was not violated by the DOE's implementation of furloughs. After reviewing the relevant case law, administrative regulations, and statutes, the Ninth Circuit held "that 'educational

---

[2] C.J. asserts that N.D. is not precedent because it is a decision regarding a preliminary injunction rather than a decision on the merits. (Responsive Br. at 4-5.) Although the Ninth Circuit considered the likelihood of the success on the merits, the Court disagrees with C.J.'s argument that N.D. does not constitute precedent, because the Ninth Circuit considered issues directly applicable to this case. See Department of Educ. v. T.F. ex rel. Pauline F., Civ. No. 10-00258 AWT-BMK, 2011 WL 4381740, at *8 (D. Haw. Aug. 31, 2011) ("Although the Court agrees with Defendants that N.D. was a decision on a motion for a preliminary injunction and not a decision on the merits . . ., the Court agrees with the Ninth Circuit's analysis and the conclusions the Ninth Circuit reached as a result thereof.") (internal citations omitted). For the same reasons, C.J.'s assertion that the DOE violated the stay put provision in 20 U.S.C. § 1415(j) is unpersuasive. (Responsive Br. at 32-33.)

placement' means the general educational program of the student." N.D., 600 F.3d at 1116. The Ninth Circuit went on to hold that "Hawaii's teacher furloughs and concurrent shut down of public schools is not a change in the educational placement of disabled children." Id. The plaintiffs also argued that "because their current IEPs are their current educational placement and assume a five day school week, the reduction of the school week constitutes a change in the general educational program of the student." Id. at 1117. The Ninth Circuit held that furloughs did not constitute a change in the educational program of the students because, while the IEPs assume five day weeks, they also assume some four day weeks for holidays. Id. The Ninth Circuit held that the "four day weeks created by the furloughs are no different and do not constitute changes in N.D.'s educational program." Id. Thus, to the extent the Hearings Officer concluded that furloughs constituted a change in C.J.'s educational placement or program, the Hearings Officer erred.

C.J. asserts that the Hearings Officer properly concluded that the DOE materially failed to implement the IEP after furloughs began. (Responsive Br. at 29-30, 36.) This argument is not persuasive because the Hearings Officer did not apply the test from Van Duyn ex rel. Van Duyn v. Baker School Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007). In Van Duyn, the Ninth Circuit held that a "material

failure to implement an IEP" violates the IDEA. Id. The Ninth Circuit explained that a material failure occurs when "there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." Id. A child's educational progress is probative of whether a material failure to implement the IEP occurred. Id. Under Van Duyn, the administrative agency evaluating a claim for material failure to implement the IEP must contrast the education the child is receiving with the education the child is entitled to under the IEP, and determine whether the shortfall is material. See N.D., 600 F.3d at 1117 ("A school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP.").

After reviewing the Hearings Officer's decision, it is clear that the Hearings Officer failed to assess whether the DOE materially failed to implement specific provisions of the IEP. Although the Hearings Officer cited to Van Duyn earlier in the Decision, the Hearings Officer did not refer to Van Duyn when analyzing whether the DOE materially failed to implement the IEP. (Decision, R. at 1116-17.) Additionally, the Hearings Officer concluded that the IDEA violations in this case were procedural and substantive, when the Ninth Circuit has held that failures to implement the IEP are neither procedural nor substantive. (Id.

at 1117); Department of Educ. v. T.F. ex rel. Pauline F., Civ. No. 10-00258 AWT-BMK, 2011 WL 4381740, at *7 (D. Haw. Aug. 31, 2011) ("The Hearings Officer characterized the IDEA violations in this case as being procedural and substantive, when the Ninth Circuit indicated that IEP implementation failures are neither.") (citing Van Duyn, 502 F.3d at 818–19). To properly apply the Van Duyn standard, the Hearings Officer must analyze whether the DOE failed to implement specific provisions of C.J.'s IEP. See Van Duyn, 502 F.3d at 822. If the DOE has failed to implement specific provisions of C.J.'s IEP, the Hearings Officer must decide whether the failure was material. Id. In doing so, the Hearings Officer is required to determine whether "there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." Id. In this case, the Hearings Officer must determine whether the DOE materially failed to implement specific provisions of C.J.'s IEP despite its efforts after furloughs began. When assessing whether the DOE materially failed to implement C.J.'s IEP, the Hearings Officer did not perform the foregoing analysis. Therefore, the Hearings Officer erred by failing to apply the Van Duyn standard to the facts of this case.

## CONCLUSION

For the foregoing reasons, the Court FINDS and RECOMMENDS

that the case be REVERSED and REMANDED to the Hearings Officer to consider the application of Van Duyn.

DATED: Honolulu, Hawaii, November 29, 2011.

IT IS SO FOUND AND RECOMMENDED.




/S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Dept. of Educ., State of Hawaii v. C.J. et al., Civ. No. 10-00257 AWT-BMK; FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER